UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRABHASH JAIN,<br><br>    Plaintiff,<br><br>  v.<br><br>S1 BIOPHARMA, CO., TRINET HR II, INC., JOHN/JANE DOES 1-5, fictitious individuals to be named after discovery, and ABC CORPS 1-5, fictitious corporate entities to be named after discovery,<br><br>    Defendants. | Civil Action No.:<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

  Plaintiff Prabhash "Peter" Jain ("Plaintiff"), by and through his attorneys Dawkins & Warrington Law Group, hereby alleges as follows against S1 Biopharma, Co. ("S1"), Trinet HR II, Inc. ("Trinet"), JOHN/JANE DOES 1-5, fictitious individuals to be named after discovery, and ABC CORPS 1-5, fictitious corporate entities to be named after discovery (hereinafter, "Defendants"):

## NATURE OF THE CLAIMS

  1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including wage-and-hour violations, its discriminatory treatment of Plaintiff based on his race and/or national origin, and Defendants' unlawful retaliation against Plaintiff after he complained about Defendants' unlawful wage-and-hour violations in the workplace.

  2. Plaintiff brings this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq., as amended by the Civil Rights Act of 1991, at 42 U.S.C. §1981(a) ("Title VII"), and New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD").

3. Defendants engage in a willful and deliberate policy and practice of failing to compensate Plaintiff for all hours worked and/or at the overtime wage rates required by law.

4. Specifically, Defendants improperly required Plaintiff to work extensive hours doing high-level business finance work without paying any of the agreed upon compensation and failing to pay earned wages for all hours worked in violation of the FLSA.

5. Plaintiff was not paid the specific amounts agreed to by Defendants for his straight time compensation for his hours worked for Defendants.

6. Plaintiff was not paid overtime compensation for hours worked over forty (40) in a workweek, particularly when his pay and hours were significantly reduced to part-time status.

7. When Plaintiff complained to Defendants about its engagement in unlawful wage-and-hour practices by failing to pay Plaintiff for his hours worked for Defendants, Defendants proceeded to terminate Plaintiff.

8. Following Plaintiff's wrongful termination, he was not paid the amounts to which Defendants had agreed he was entitled without justification.

9. Plaintiff, the only non-white male at his level within the Defendants' employ that was terminated by Defendants, was treated differently from his white, male counterparts, and was therefore discriminated against based on race and/or national origin.

10. Plaintiff was subjected to discrimination, retaliation, and wrongfully terminated by Defendants, in violation of Title VII and the NJLAD.

**JURISDICTION AND VENUE**

11. Pursuant to 28 U.S.C. §§ 1331 and 1343 this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA and Title VII.

12. Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's related claims arising under State law.

13. Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

### A. Plaintiff Prabhash "Peter" Jain

14. Plaintiff, a 70-year-old minority male finance professional, is a resident of the State of New Jersey and had been employed by Defendants as a CFO Support Manager and/or Finance Manager for over seven (7) years, from March of 2014 through June 14, 2021.

15. In or about March of 2014, Plaintiff began working for Defendants as their CFO Support Manager and/or Finance Manager reporting to Defendants' Chief Financial Officer ("CFO") John F. Kaufman and Chief Executive Officer ("CEO") Nicolas G. Sitchon.

16. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of all relevant statues and regulations.

### B. Defendants S1 Biopharma Co. et als,

17. S1 Biopharma Co. ("Defendant S1" or the "Company") is a domestic limited liability company with its principal place of business located at 7 World Trade Center, 250 Greenwich Street, New York, NY 10007.

18. At all relevant times, Defendant S1 is owned and operated by its Directors, Nicolas Sitchon, who serves as Defendants' CEO, and John Kaufmann, who serves as CFO (together, the "Directors").

19. The Directors, acting on behalf of Defendants, knowingly and willfully acted to

deny Plaintiff pay, discriminated against him based on race and national origin, retaliated against him for complaining about Defendants failure to pay, and ultimately wrongfully terminated his employment with their company.

20. At all relevant times, Defendants have controlled and directed the terms of employment and compensation of Plaintiff.

21. At all relevant times, Defendants have established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, work schedules, and payroll applicable to Plaintiff.

22. At all relevant times, Defendants have controlled Plaintiff's rate and method of pay.

23. At all relevant times, Defendants have maintained employment records for Plaintiff.

24. At all relevant times, Defendants have maintained and exercised authority to hire, fire, discipline, and promote Plaintiff.

25. At all relevant times, Defendant S1 was and is a direct "employer" within the meaning of all relevant statues and regulations.

26. Defendant Trinet is a California-based corporation that operates as a cloud-based professional employer organization for small and medium-sized businesses, specializing in the administration of payroll and health benefits and advising clients on employment law compliance and risk reduction, acting in some cases as an outsourced human resources department, with its principal place of business located at One Park Place, Suite 600, Dublin, CA 94568.

27. At all relevant times, Defendant Trinet served as Defendant S1's HR vendor.

## FACTS

**A.     Background**

28.     Defendant S1 is a New York-based pharmaceutical products development company that that specializes in "drugs intended for treating sexual dysfunction in both women and men".

29.     In or about March of 2014, the Directors interviewed and hired Plaintiff as a full-time, salaried "CFO Support Manager" and/or "Finance Manager" reporting to CFO Kaufman and CEO Sitchon.

30.     Beginning in or about April of 2014 through December 31, 2018, Plaintiff worked for Defendants as a full-time professional with a listed annual salary of $105,000.00.

31.     In or about August of 2016, Plaintiff first came to find discrepancies in his pay and began to make inquiries and complaints to the Directors, specifically the CFO and CEO.

32.     Indeed, during this timeframe, Plaintiff discussed with the Directors, both in-person and via written correspondence and on a number of occasions, that Defendants had failed to make payment of Plaintiff's agreed upon wages.

33.     By 2018, Plaintiff contended that approximately $264,070.00 had not been paid to him by Defendants.

34.     Defendants admitted to Plaintiff that they owed to him this amount and kept assuring Plaintiff that they were working on "financial arrangements" and that "payment should be made soon."

35.     Unfortunately, notwithstanding Plaintiff's follow-up, only a few payments were ever made to Plaintiff going to this claimed amount.

36.     Defendants, via the Directors, controls all aspects of Plaintiff's employment.

37.     Plaintiff typically performed his work on the Defendants' premises, or worked

from home at Defendants' direction, using the Defendants' equipment.

38. While Plaintiff occasionally was required or allowed to work remotely following the advent of COVID-19, as a general proposition, Plaintiff consistently worked on premises for Defendants while working for the Company.

39. The financial work performed by Plaintiff is integral to Defendants' business.

40. Plaintiff was supervised closely by the Directors and did not have autonomy to make unilateral decisions regarding the performance of his job responsibilities.

41. Plaintiff worked primarily, and exclusively, for Defendants at all times here relevant.

**B.    Defendant's Failure to Pay Plaintiff's Wages for All Hours Worked**

42. Defendants engaged in a common pattern and practice of deliberately denying Plaintiff wages for compensable hours worked.

43. Over his seven (7) of years in Defendants' employ, Plaintiff enjoyed positive job performance appraisals, was afforded stock options, and placed over complex matters in the interest of the Company, including high-stakes external audit processes.

44. On January 1, 2019, Defendants, citing financial hardship for the Company, requested that Plaintiff consider moving down to part-time employment status, at an annual salary of $30,000.00.

45. Plaintiff reluctantly agreed to this arrangement, as he understood it to be a short-term agreement while the Company recovered from their noted financial hardship.

46. On October 30, 2019, Plaintiff contacted Defendants' CFO, Mr. Kaufman, claiming owed wages of $279,489.00.

47. On or about the same date, CFO Kaufman responded accepting that the debt was owed, stating, in relevant part, the following: "I don't know when we will bring in a large

investor or partner. When I tell you that we are trying to get funds to pay down your comp balance, I am letting you know that we are working on it, it is important to us, and that **you will be the first person we write a check to**. And until we can get in that large investor, **we want to make smaller payments as we have done and continue to do.**" (Emphasis added).

48. Unfortunately, Defendants would fail to keep up with the "smaller payments" they negotiated with Plaintiff.

49. On or about May 8, 2020, CFO Kaufman contacted Plaintiff to explain that Defendants were tracking pay owed to Plaintiff, including interest accruing on same.

50. On the same date, CFO Kaufman further stated, "I also want to re-iterate, while we track the base compensation and the interest separately, **Nick and I both want to pay that interest portion**." (Emphasis added).

51. Attempts to restart the issuances of Defendants' payments by Plaintiff notwithstanding, Defendants have refused to respond to Plaintiff's consistent outreach concerning his claimed unpaid wages and are thereby continually engaged in violations of Plaintiff's rights.

52. In or about February of 2021, Defendants requested that Plaintiff return to working full-time, specifically to assist Defendants with completing an audit that was underway through the Cherry Bekaert, LLP Accounting Firm.

53. For this purpose, Defendants reinstated Plaintiff with a full-time annual salary of $105,000.00.

54. Defendants also promised Plaintiff that they would make a partial payment in the amount of $100,000.00 on Plaintiff's accruing unpaid wages and interest with the Company for payment of past work by Plaintiff.

7

55. On or about February 10, 2021, CFO Kaufman personally sent correspondence to Plaintiff stating that the Companies will pay Plaintiff $100,000.00 towards his unpaid wages, increase his base salary back up to $105,000.00, and totaled the amount due to Plaintiff at approximately $225,000.00 at that time.

56. In the same correspondence, CFO Kaufman agreed to begin compensating Plaintiff for backpay owed and for future audit work that was begun and underway.

57. Unfortunately, following Plaintiff's completion of the audit for the Company, Defendants yet again failed to keep their promise and are thereby continually engaged in violations of Plaintiff's rights.

C. **Defendant Discriminates & Retaliates Against Plaintiff**

58. On or about June 14, 2021, Defendants acted to unlawfully terminate Plaintiff's employment.

59. Plaintiff was the only person at his level in the Company that was terminated.

60. Plaintiff was the only non-white male operating at his level in the Company.

61. Plaintiff was the only Indian-American professional operating at his level in the Company.

62. Plaintiff was treated differently from other similarly situated white male colleagues at the Company and was subjected to disparate treatment based on his race and/or national origin.

63. Indeed, Plaintiff received an email correspondence from Defendants' CEO, Mr. Sitchon, stating, in relevant part, the following: "**S1 has run out of capital. We cannot ask you to do any further work beyond this week.** Your payroll has been paid by S1 through to the end of this week (consisting of Monday and Tuesday as these are your 2 days part-time with S1).

Therefore[,] you will receive pay through the end of this week."  (Emphasis added).

64. Subsequently, Plaintiff, through former counsel, negotiated a payment plan with Defendants concerning his unpaid wages.

65. The Parties' payment plan required Defendants to remit $1,600.00 monthly to Plaintiff as payment against his unpaid wages (hereinafter, the "Payment Plan").

66. Defendants also agreed to the accrual of 8% interest on the base pay amount owed to Plaintiff.

67. In or about August of 2022, Defendants arbitrarily discontinued making payments to Plaintiff, even though Defendants previously negotiated the Payment Plan as favorable to the Company, and are thereby continually engaged in violations of Plaintiff's rights.

68. In total, Plaintiff received approximately $11,200.00 in payments before Defendants improperly discontinued to make payments pursuant to the parties' agreed upon Payment Plan, resulting in continual violations of Plaintiff's rights.

69. As of September 19, 2022, Plaintiff was owed over $300,000.00 at the time of Defendants' improper stoppage of making payments according to the Parties' Payment Plan.

70. In or about July of 2022, Plaintiff filed the two cases with the New Jersey Department of Labor and Workforce Development ("NJDLWD").

71. On or about August 28, 2023, Plaintiff sent a demand letter to the Directors stating his intentions of withdrawing his NJDWLWD matters and filing formal suit if the Parties were not able to discuss settlement of Plaintiff's claims.

72. Plaintiff received no response to his demand letter.

73. On or about August 31, 2023, Plaintiff withdrew his matters before the NJDWLWD in order to file the present application for relief.

## COUNT ONE
### (Breach of Contract)

74. Plaintiff repeats and realleges the preceding paragraphs 1 through 73 as though fully set forth herein.

75. Defendants offered and entered into a contract with Plaintiff to pay him for hours worked and/or services rendered, which is a valid, binding, and enforceable contract.

76. Plaintiff performed his obligations required by the Parties' contract.

77. Defendants have failed to perform and comply with their contractual obligations due and owing to Plaintiff under the contract.

78. Defendants have breached the contract by failing to pay Plaintiff for hours Defendants suffered him to work and/or for services rendered.

79. Defendants have breached the contract by failing to abide by their own proposed payment schedule or payment plan.

80. As a direct and proximate result of the Defendants' breach of the contract, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:

    A. Compensatory damages;

    B. Interest, attorney's fees, and costs of suit; and

    C. Such other relief as this Court deems just and equitable.

## COUNT TWO
### (FLSA – Failure to Pay)

81. Plaintiff hereby repeats and realleges the foregoing allegations in Paragraphs 1 through 80, as if set forth fully herein.

82. During the full statutory period, Plaintiff were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and all applicable regulations thereunder.

83. The FLSA requires covered employers, including Defendants, to pay Plaintiff for all hours worked and requires a minimum pay of $684.00 required for all executive, administrative, and professional workers.

84. Plaintiff is not exempt from the requirement that Defendants pay him straight time for work.

85. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff for work performed.

86. As a result of Defendants' failure to compensate Plaintiff for straight time and failure meet the FLSA's minimum pay requirement, Defendants have violated the FLSA and/or applicable regulations thereunder.

87. Defendants knew or should have known of its obligation to pay Plaintiff straight time pay and the FLSA's $684.00 minimum pay requirement for all executive, administrative, and professional workers.

88. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the FLSA.

89. Defendants' violations of the FLSA have significantly damaged Plaintiff and entitles him to recover the total amount of his unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

**COUNT THREE**
**(Title VII & LAD – Race Discrimination, National Origin Discrimination)**

90. Plaintiff incorporates by reference Paragraphs 1 through 89, as though fully set forth at length herein.

91. Defendants subjected Plaintiff to discrimination based on his race and national origin, as detailed above.

92. Plaintiff, the only non-white male operating at his level in the Company, was denied pay, ignored when he complained about his pay being denied and/or delayed, and was ultimately terminated following his complaints and attempts to reconcile differences with the Directors.

93. Plaintiff considered the aforementioned conduct to be discriminatory, and verbally reported his discontent with said discriminatory conduct, to the Directors, including, but not limited to, Messrs. Sitchon and Kaufmann.

94. Accordingly, Defendants were fully aware of Plaintiff's claimed discrimination. However, despite Plaintiff's numerous complaints of unfair treatment, Defendants failed to cause the discriminatory conduct to cease.

95. Rather than cause the discriminatory conduct to cease, Defendants retaliated against Plaintiff by terminating his employment.

96. Defendants' stated reason for Plaintiff's termination or demotion is pretextual, and he was being targeted in an effort to push Plaintiff out of the Company for attempting to advance his workplace rights.

97. Accordingly, Defendants' discriminatory acts have deprived Plaintiff of equal employment opportunities because of his race and/or national origin violation of Title VII.

98. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendants in violation of Title VII, Plaintiff has sustained permanent and irreparable harm, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

99. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendants in violation of Title VII, Plaintiff suffered severe

emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT FOUR
### (NJLAD – Conscientious Employee Protection Act (CEPA))

100. Plaintiff incorporates by reference paragraphs 1 through 99, as though fully set forth at length herein.

101. Defendants intentionally subjected Plaintiff to an adverse employment action where he was demoted and wrongfully terminated, and discriminated against based on his race (South Asian) and national origin (Indian), as detailed above.

102. Defendants' Directors actually and actively participated, as members of upper management, in denying Plaintiff's pay and failing to abide by the Parties' Payment Plan.

103. Defendants' Directors acted with willful indifference, as members of upper management, in denying Plaintiff's pay and failing to abide by the Parties' Payment Plan.

104. Plaintiff considered the aforementioned conduct to be discriminatory, and reported said discriminatory conduct, both verbally and in writing, to Defendants' Directors, including, but not limited to, Messrs. Sitchon and Kaufmann.

105. Accordingly, Defendant was fully aware of Plaintiff's complaints of wage and hour issues and differential treatment.

106. However, despite Plaintiff's numerous complaints of discrimination, Defendant failed to conduct an investigation or otherwise cause the discriminatory conduct to cease.

107. Rather than cause the discriminatory conduct to cease, Defendant retaliated against Plaintiff by targeting his for demotion and ouster from the practice.

108. Defendants' reason for Plaintiff's demotions and/or terminations is pretextual, as Plaintiff was actually being targeted in an effort to push Plaintiff out of the Company for attempting to advance his workplace rights.

109. Accordingly, Defendants' discriminatory acts have deprived Plaintiff of equal employment opportunities because of his gender and age in violation of the NJLAD.

110. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendants in violation of the NJLAD, Plaintiff sustained permanent and irreparable harm, which caused his to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

111. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendants in violation of the NJLAD, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT FIVE
### (Unjust Enrichment/Quantum Meruit – Pled in the Alternative)

112. Plaintiff repeats and realleges the preceding paragraphs 1 through 111, as though fully set forth herein.

113. As set forth above, Plaintiff properly demanded the Defendants remit his full pay for having unlawfully breached the Parties' contract and failed to pay Plaintiff for hours worked and/or services rendered.

114. Defendants have wrongfully retained, and have refused to remit, the monies owed for hours worked and/or services already rendered to Defendants, nor have Defendants honored the payment plan they set up with Plaintiff.

115. Defendants have received the benefit of services rendered without remittance of pay under the Parties' contract.

116. The retention of such benefits by the Defendants would be manifestly unjust.

117. Defendants have thus been unjustly enriched at Plaintiff's expense, and Plaintiff is entitled to be compensated for the benefit it has conferred upon Defendants in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:

    A.    Compensatory damages;

    B.    Injunctive relief;

    B.    Punitive damages;

    C.    Interest, attorney's fees, and costs of suit; and

    D.    Such other relief as this Court deems just and equitable.

## PRAYER FOR RELIEF

112. Plaintiff incorporates by reference Paragraphs 1 through 117 of his Complaint, as though fully set forth at length herein.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

    A.    Declare that the practices complained of herein are unlawful under applicable federal and State law;

    B.    Grant an injunction and order permanently restraining Defendants from engagingin such unlawful conduct;

    C.    Determine the damages sustained by Plaintiff as a result of Defendants' violations of the FLSA and Title VII, and award those damages against Defendants and in favor of Plaintiff, plus such pre-judgment and post-judgment interest as may be allowed by law;

    D.    Determine the damages sustained by Plaintiff as a result of the Defendants' violations of the NJLAD, and award those damages against the Defendants and in favor of Plaintiff, plus such pre-judgment and post-judgment interest as may be allowed by law;

  E. Award Plaintiff an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

  F. Order that Defendants compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination;

  G. Order that Defendants compensate Plaintiff with an award of front pay, if appropriate.

  H. Order that Defendants pay to Plaintiff punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

  I. Order that Defendants pay to Plaintiff, pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

  J. Award Plaintiff his reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

  K. Grant Plaintiff such other and further relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

**DAWKINS & WARRINGTON LAW GROUP**
55 Madison Avenue
Suite 400 - #4292
Morristown, New Jersey 07960
(201) 919-5458
Cliff@DawkinsWarrington.com
ATTORNEYS FOR PLAINTIFF

By: */s/ Clifford Dawkins Jr.*
Clifford D. Dawkins, Esq. (ID. NO. 164792015)

Dated: January 2, 2024

16

## VERIFICATION

I, PRABHASH "PETER" JAIN, of appropriate age and sound mind hereby verify that the statements contained in this Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties relating to unsworn falsification to authorities.

Date January 15, 2024

_Prabhash Jain_
PRABHASH "PETER" JAIN, Plaintiff