**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PRABHASH JAIN,<br><br>Plaintiff,<br><br>          v.<br><br>S1 BIOPHARMA, CO., *et al.*,<br><br>Defendants. | No. 24-cv-924<br><br><br>**MEMORANDUM ORDER** |

**CECCHI, District Judge**.

Before the Court is defendant S1 Biopharma, Co.'s ("S1") motion for partial dismissal of plaintiff Prabhash Jain's ("Plaintiff") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 17; ECF No. 17-1 ("Moving Br."); *see* ECF No. 14 ("Am. Compl.").  Plaintiff opposed the motion, ECF No. 18 ("Opp'n Br."), and S1 replied, ECF No. 19 ("Reply Br.").  The Court decides the motion without oral argument.  Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons stated below, the Court will grant in part and deny in part S1's motion.

**WHEREAS** this action stems from Plaintiff's employment at S1, a "New York-based pharmaceutical products development company."  Am. Compl. ¶¶ 19, 28.  Plaintiff was hired as a "full-time, salaried 'CFO Support Manager' and/or 'Finance Manager'" around March 2014.  *Id.* ¶ 29.  Plaintiff worked in this role from April 2014 through December 31, 2018, earning an annual salary of $105,000 and reporting directly to S1's chief executive officer ("CEO") and chief financial officer ("CFO").  *Id.* ¶¶ 29–30; and

**WHEREAS** around August 2016, Plaintiff noticed that he was not being paid his full salary.  *Id.* ¶¶ 31–33.  Sometime thereafter, S1 allegedly acknowledged that the company owed Plaintiff over $264,070 and was "working on [a] 'financial arrangement'" to make payment soon.  *Id.* ¶¶ 33–34.  Plaintiff alleges that S1 never followed through on this statement.  *Id.* ¶ 35; and

**WHEREAS** on January 1, 2019, S1 moved Plaintiff into a part-time role at an annual salary of $30,000. *Id.* ¶¶ 45–46. In October 2019, Plaintiff notified S1's CFO that the company owed him $279,489 in unpaid wages. *Id.* ¶ 47. Just as before, the company (via its CFO) acknowledged that it owed Plaintiff this amount, and told Plaintiff that the company was "working on it" and intended to pay Plaintiff in full. *Id.* ¶ 48. In particular, S1 indicated that it wanted to "make smaller payments as" the company had done in the recent past. *Id.* According to Plaintiff, S1 failed "to keep up with the 'smaller payments' [it] negotiated with Plaintiff." *Id.* ¶ 49. Nonetheless, in May 2020, S1's CFO reiterated to Plaintiff that the company was "tracking pay owed to" him, including "interest accruing on [the] same." *Id.* ¶¶ 50–51; and

**WHEREAS** in February 2021, S1 brought Plaintiff back to his full-time role, again with an annual salary of $105,000. *Id.* ¶¶ 53–54. Around this time, S1 also told Plaintiff that it would "make a partial payment in the amount of $100,000.00 on Plaintiff's accruing unpaid wages." *Id.* ¶¶ 55–56. According to Plaintiff, S1 never made this payment. *Id.* ¶ 58; and

**WHEREAS** on June 14, 2021, S1 terminated Plaintiff's employment. *Id.* ¶ 59. Plaintiff, an "Indian-American" man, alleges that his termination was discriminatory. *Id.* ¶¶ 60–63; and

**WHEREAS** after his termination, Plaintiff and S1 allegedly entered into a contract whereby S1 agreed to pay Plaintiff his unpaid wages at a rate of $1,600 per month.[1] *Id.* ¶¶ 66, 70. However, in August 2022, S1 allegedly stopped making payments to Plaintiff under the terms of their agreement. *Id.* ¶ 72. Plaintiff alleges that he received approximately $11,200 in payments before S1 "discontinued . . . payments pursuant to the parties'" agreement. *Id.* ¶ 75. Accordingly,

---

[1] Although the amended complaint is not entirely clear on this point, Plaintiff appears to allege that this was a "settlement," *i.e.*, that Plaintiff agreed to relinquish claims related to S1 "potentially violating Plaintiff's workplace rights." Am. Compl. ¶¶ 68–69.

Plaintiff alleges that as of September 2022, S1 owed him over $309,000.  *Id.* ¶ 76; *see also id.* ¶ 71 (alleging that S1 "agreed to the accrual of 8% interest"); and

**WHEREAS** in July 2022, Plaintiff filed "two cases with the New Jersey Department of Labor and Workforce Development" ("NJDLWD").  *Id.* ¶ 77.  After sending demand letters to S1 informing the company of "his intentions of withdrawing his [NJDLWD] matters and filing formal suit if" the parties "could not discuss settlement of Plaintiff's claims," Plaintiff withdrew his NJDLWD complaints in August 2023, *id.* ¶¶ 78–80, and then filed this action on February 19, 2024, ECF No. 1.  After S1 moved to dismiss Plaintiff's original complaint, ECF No. 12, Plaintiff filed his now-operative amended complaint, Am. Compl.  Shortly thereafter, S1 again moved to dismiss under Rule 12(b)(6).  ECF No. 17; and

**WHEREAS** a Rule 12(b)(6) motion "tests the legal sufficiency of a complaint under [Federal Rule of Civil Procedure 8(a)(2)'s] plausibility pleading standard," *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138 (3d Cir. 2024), which requires that a "pleading . . . contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Accordingly, to survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face if the complaint contains "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the misconduct alleged.  *Twombly*, 550 U.S. at 556.  In evaluating a Rule 12(b)(6) motion, the Court accepts the complaint's well-pled factual allegations as true, construes them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor.  *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327–28 (3d Cir. 2022).  Moreover, a defendant has

3

the burden of showing that dismissal under Rule 12(b)(6) is appropriate. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016); and

**WHEREAS** "[t]echnically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in [an] answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). However, Third Circuit law allows courts to dismiss a claim pursuant to Rule 12(b)(6) based on a statute of limitations defense, but only if "the time alleged in the statement of a claim shows that the cause of action" is untimely. *Id.* (citation omitted). "[I]f the [statute of limitations] bar is not apparent on the face of the complaint, then" a court may not dismiss a claim on statute of limitations grounds under Rule 12(b)(6). *Id.* (citation omitted); and

**WHEREAS** Plaintiff's amended complaint contains four counts. Count One asserts a claim for breach of contract. Am. Compl. ¶¶ 81–87. Count Two asserts a claim under the Fair Labor Standards Act ("FLSA"). *Id.* ¶¶ 88–96. Count Three asserts claims for race and national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII) and the New Jersey Law Against Discrimination ("NJLAD"). *Id.* ¶¶ 97–117. And Count Four asserts a claim for unjust enrichment, pled in the alternative under Federal Rule of Civil Procedure 8(d)(2). *Id.* ¶¶ 118–23. Concerning relief, Plaintiff seeks damages, injunctive and declaratory relief, and attorney's fees and costs. *Id.* ¶ 124. S1 seeks dismissal of Counts One to Three, Moving Br.; ECF No. 17-2, which the Court will address in turn; and

**WHEREAS** first, the Court will not dismiss Plaintiff's breach of contract claim. S1's sole argument for dismissal is that Plaintiff's breach of contract claim is time-barred. Moving Br. at 15–16. In New Jersey, the applicable statute of limitations for breach of contract claims is six years. *See HP Holding LLC v. Red Roof Inns, Inc.*, No. 23-20907, 2024 WL 2720463, at *7 (D.N.J.

4

May 28, 2024) (citing N.J. Stat. Ann. § 2A:14-1).  Plaintiff's breach of contract claim stems from S1's alleged breach of the parties' settlement agreement in August 2022 when S1 stopped making monthly payments on the balance of Plaintiff's unpaid wages.  Am. Compl. ¶ 72.  As such, the six-year statute of limitations does not expire until August 2028 and the amended complaint does "not clearly show that Plaintiff's [breach of contract] claim is time-barred."  *Afifi v. Found. Bldg. Materials Inc.*, No. 25-2884, 2026 WL 837019, at *4 (D.N.J. Mar. 26, 2026); and

**WHEREAS** second, the Court will dismiss Plaintiff's FLSA claim.  S1's primary argument for dismissal centers on the applicable statute of limitations.[2]  Moving Br. at 10.  "The statute of limitations for FLSA claims is two years, unless an FLSA violation was willful, in which case the limitations period is extended to three years."  *Livers v. Nat'l Collegiate Athletic Ass'n*, No. 17-4271, 2018 WL 2291027, at *8 (E.D. Pa. May 17, 2018) (citing 29 U.S.C. § 255(a)).  An FLSA violation "is willful if the employer either knows or shows reckless disregard for whether its conduct violates the FLSA."  *Chavez-Deremer v. Amazing Care Home Healthcare Servs., LLC*, No. 24-190, 2026 WL 413312, at *16 (E.D. Pa. Feb. 13, 2026); and

**WHEREAS** here, Plaintiff's allegations do not allow him to utilize the longer, three-year limitations period for willful FLSA violations.  Although he plausibly alleges that S1 knew it was underpaying him, *see, e.g.*, Am. Compl. ¶¶ 34, 48, 50–51, 55–57, Plaintiff does not plausibly allege that S1 had "'actual notice of the requirements of the FLSA' and proceeded to violate them

---

[2] S1 also argues that Plaintiff's FLSA claim must be dismissed because Plaintiff failed to "exhaust administrative remedies" by filing a charge with the U.S. Equal Employment Opportunity Commission ("EEOC").  Moving Br. at 6.  However, "[t]he FLSA does not provide for an administrative review process, and does not require exhaustion of administrative remedies before a plaintiff may file a claim in federal court." *Barreraz v. Dennis Energy Servs., Inc.*, No. 15-193, 2016 WL 8711407, at *2 (W.D. Tex. Aug. 19, 2016); *see also Arthur v. Constellation Brands, Inc.*, No. 16-4680, 2016 WL 6248905, at *2 (N.D. Cal. Oct. 26, 2016) (noting that "the FLSA [does not] require a plaintiff employee to exhaust administrative remedies before filing a claim in federal court").

anyway" by underpaying him, *Amazing Care Home Healthcare*, 2026 WL 413312, at *16 (quoting *Sec'y U.S. Dep't of Lab. v. Nursing Home Care Mgmt. Inc.*, 128 F.4th 146, 159 (3d Cir.), *cert. denied sub nom. Nursing Home Care Mgmt., Inc. v. Chavez-DeRemer*, 146 S. Ct. 99 (2025)); *Tyger v. Precision Drilling Corp.*, 832 F. App'x 108, 115 (3d Cir. 2020) ("A FLSA violation is willful when the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited.'" (citation omitted)); *see, e.g.*, Am. Compl. ¶ 94 ("Defendant knew *or should have known* of its obligation to pay Plaintiff straight time pay and the FLSA's $684.00 minimum pay requirement for all executive, administrative, and professional workers." (emphasis added)). As such, Plaintiff's FLSA claim is subject to the default two-year limitations period; and

**WHEREAS** Plaintiff alleges that S1 terminated him on June 14, 2021. Am. Compl. ¶ 59. Therefore, at the very latest, his FLSA claim accrued on June 14, 2023. *Griffin v. Dep't of Hum. Servs.*, No. 18-14697, 2019 WL 3369783, at *6 (D.N.J. July 26, 2019) (noting that a "cause of action under [the] FLSA [begins to] accrue[] whenever the employer fails to pay the required compensation for any particular workweek"), *aff'd sub nom. Griffin v. State of N.J. Dep't of Hum. Servs.*, No. 19-2751, 2021 WL 3780078 (3d Cir. Aug. 26, 2021). Because Plaintiff filed his initial complaint on February 19, 2024, ECF No. 1, his FLSA claim, as pled, is time-barred under the default two-year statute of limitations period,[3] *Schmidt*, 770 F.3d at 249; and

---

[3] To the extent Plaintiff seeks to invoke the continuing violations doctrine, Opp'n Br. at 15–16, Plaintiff does not explain—nor is it clear to the Court—how the continuing violations doctrine applies to his FLSA claim, *Guenzel v. Mount Olive Bd. of Educ.*, No. 10-4452, 2012 WL 556256, at *2 (D.N.J. Feb. 16, 2012) ("[R]epeated failures to properly compensate employees for overtime are not treated as continuing violations but as repeated violations of an identical nature." (citing *Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 438 (D.N.J. 2001))); *see also Hajiani v. ESHA USA, Inc.*, No. 14-594, 2017 WL 5163354, at *10 n.6 (E.D. Tenn. Nov. 7, 2017); *McGuirk v. Swiss Re Fin. Servs., Corp.*, No. 14-9516, 2016 WL 10683305, at *10 (S.D.N.Y. June 17, 2016), *aff'd*, 699 F. App'x 55 (2d Cir. 2017); *Griffin v. Leaseway Deliveries, Inc.*, No. 89-6522, 1990 WL 136349, at *2 (E.D. Pa. Sept. 17, 1990).

**WHEREAS** third, the Court will dismiss Plaintiff's Title VII and NJLAD claims. As to the Title VII claim, S1's sole argument for dismissal is that Plaintiff failed to file this action within 90 days of receiving a right to sue letter from the EEOC, as required by 42 U.S.C. § 2000e–5. Moving Br. at 6–9. Concerning this requirement, the amended complaint does not contain any "factual allegations as to whether he exhausted administrative remedies." *Haig v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 25-15438, 2026 WL 1453869, at *7 (D.N.J. May 22, 2026). Instead, Plaintiff attaches a right to sue letter to his opposition brief. ECF No. 18-1. However, "surviving a motion to dismiss a Title VII claim requires the plaintiff not only to exhaust his administrative remedies, *but to affirmatively plead that he has done so in his complaint*." *Johnson v. Performance Food Grp.*, No. 10-3742, 2010 WL 4668346, at *3 (D.N.J. Nov. 5, 2010) (emphasis added); *see also Boyer v. City of Phila.*, No. 13-6495, 2015 WL 9260007, at *2 (E.D. Pa. Dec. 17, 2015) ("[A]t the pleading stage, a plaintiff 'is not required to attach the EEOC/PHRC charges or the right to sue letters to his' complaint, and a plaintiff's 'only burden is to sufficiently allege exhaustion.'" (quoting *Wardlaw v. City of Phila.*, No. 09-3981, 2011 WL 1044936, at *3 (E.D. Pa. Mar. 21, 2011))); *Arce v. Bank of Am.*, No. 13-2776, 2013 WL 6054817, at *5 (D.N.J. Nov. 15, 2013) ("Plaintiff fails to plead that he exhausted his administrative remedies by first filing a charge with the EEOC."). Therefore, the Court must dismiss Plaintiff's Title VII claim; and

**WHEREAS** as to Plaintiff's NJLAD claim, S1's sole argument for dismissal once again focuses on the applicable statute of limitations. Moving Br. at 9. NJLAD claims are subject to a two-year statute of limitations. *See Davis v. Cape May Prosecutor's Off.*, No. 22-783, 2023 WL 1883327, at *9 (D.N.J. Feb. 10, 2023). Here, Plaintiff's discrimination claims center on three alleged actions. First, Plaintiff cites his transfer to a part-time role in January 2019. Am. Compl. ¶¶ 45, 103. Second, Plaintiff cites S1's failure to pay him in full during his employment with the

7

company. *Id.* ¶ 99. And third, Plaintiff cites his termination on June 14, 2021.[4] *Id.* ¶¶ 59, 107, 113. Plaintiff instituted this action in February 2024, ECF No. 1, so under a basic application of the applicable limitations period, Plaintiff's NJLAD claim is time-barred; and

**WHEREAS** Plaintiff appears to invoke the continuing violations doctrine in an attempt to save his NJLAD claim. Opp'n Br. at 15. "[U]nder the continuing violation[s] doctrine, a plaintiff 'may pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period.'" *Hollingsworth v. Port Auth. of N.Y. & N.J.*, No. 06-571, 2009 WL 1702293, at *3 (D.N.J. June 16, 2009) (citation omitted). But the allegations on which Plaintiff's discrimination claims are based are insufficient to demonstrate a pattern of essentially continuous discriminatory conduct. Instead, these allegations constitute several "discrete acts of discrimination." *Mohamed v. Atl. Cnty. Special Servs. Sch. Dist.*, No. 17-3911, 2019 WL 1418123, at *7 (D.N.J. Mar. 29, 2019); *see, e.g.*, *Castro v. Cnty. of Bergen*, No. A-1903-14T1, 2016 WL 1092605, at *7 (N.J. Super. Ct. App. Div. Mar. 22, 2016) (noting that termination is a discrete act); *Alexander v. Seton Hall Univ.*, 8 A.3d 198, 199, 207 (N.J. 2010) (same for the payment of wages). Therefore, Plaintiff's NJLAD claim—as alleged—is time-barred. *Schmidt*, 770 F.3d at 249.

Accordingly, for the reasons stated above, **IT IS** on this 22nd day of July, 2026;

**ORDERED** that the S1's motion for partial dismissal (ECF No. 17) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

---

[4] Plaintiff also alleges that S1 discriminated against him by failing to honor the parties' settlement agreement "while continuing to enter into contracts with other individuals." Am. Compl. ¶ 109. However, the NJLAD "does not cover 'discrimination during the ongoing execution of a contract.'" *7-Eleven, Inc. v. Sodhi*, No. 13-3715, 2016 WL 3085897, at *7 (D.N.J. May 31, 2016) (citation omitted), *aff'd sub nom. 7 Eleven Inc v. Sodhi*, 706 F. App'x 777 (3d Cir. 2017).

**ORDERED** that Counts Two (the FLSA claim) and Three (the Title VII and NJLAD claims) of the amended complaint (ECF No. 14) are **DISMISSED WITHOUT PREJUDICE**; and it is finally

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Order to submit a second amended complaint that addresses the deficiencies identified herein.  Insofar as Plaintiff submits a second amended complaint, he shall also provide a form of the second amended complaint that indicates in what respect it differs from the amended complaint, by bracketing or striking through materials to be deleted and underlining materials to be added.  L. Civ. R. 15(b)(2).

**SO ORDERED**.

/s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**

9